EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
GREGORY A. OTT
Deputy Attorney General
ALLEN R. CROWN
Deputy Attorney General
State Bar No. 56818
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 703-5847
 Fax: (415) 703-1234
 Email: Allen.Crown@doj.ca.gov
Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **TRI D. NGUYEN,**<br><br>                          Petitioner,<br><br>     v.<br><br>**TOM FELKER, Warden,**<br><br>                          Respondent. | C 07-2479 MHP (pr)<br><br>**MOTION TO DISMISS FOR FAILURE TO EXHAUST STATE REMEDIES** |

Respondent moves this Court for an order dismissing the petition for writ of habeas corpus for failure to exhaust state remedies. Respondent has not noticed this motion for hearing because petitioner is in custody and not represented by counsel.

**INTRODUCTION**

Petitioner, California state prisoner Tri D. Nguyen, filed a petition for writ of habeas corpus raising five claims: (1) ineffective assistance of appellate counsel in that appellate counsel failed to properly raise a Confrontation Clause claim regarding certain witnesses' testimony; (2) ineffective assistance of trial counsel in that his attorney (a) failed to investigate and present exculpatory physical evidence regarding blood on Nguyen's shirt, (b) failed to object to the

prosecutor's improper cross-examination of Nguyen, (c) failed to object to the prosecutor's improper closing argument, and (d) failed to ensure that the jury selected was fair and impartial. Respondent moves to dismiss the petition on the grounds that petitioner failed to exhaust state remedies as to all of those claims. A motion to dismiss instead of an answer on the merits is appropriate when the petition is procedurally defective. *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990); *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989); Rules Governing 18 U.S.C. § 2254 Cases, Rule 4 and Advisory Committee Notes.

## PROCEDURAL BACKGROUND

A jury convicted petitioner of first degree murder in violation of California Penal Code section 187(a) while personally using a deadly weapon within the meaning of Penal Code section 12022(b)(1). Exh. A, 1. In an unpublished opinion, the California Court of Appeal affirmed the conviction. Exh. A.

Petitioner filed a petition for review in the California Supreme Court raising claims which did not include any claim of ineffective assistance of counsel. Pet., Att. A. The California Supreme Court summarily denied review in case no. S142544 "without prejudice to any relief to which petitioner might be entitled after this court decides *People v. Giles*, S129852."[1] Pet., Exh. G.

Petitioner filed a petition for writ of habeas corpus in the Alameda County Superior Court. Pet., Att. B. The Alameda County Superior Court denied the petition for writ of habeas corpus. Pet., Exh. M.

Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal. Pet., Att. C. The California Court of Appeal denied the petition for writ of habeas corpus. Pet., Exh. N.

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. Pet., Att. D. The California Supreme Court has not yet issued an order resolving the petition for writ of

///

---

1. On March 5, 2007, the California Supreme Court issued its opinion in *People v. Giles*, 40 Cal.4th 833 (2007), and decided that the doctrine of forfeiture by wrongdoing applies to Confrontation Clause claims.

Motion to Dismiss For Failure to Exhaust State Remedies - *Nguyen v. Felker,* C 07-2479 MHP (pr)

2

habeas corpus.  Exh. B.[2/]

Petitioner filed his petition for writ of habeas corpus in this Court raising five claims: (1) ineffective assistance of appellate counsel in that appellate counsel failed to properly raise a Confrontation Clause claim regarding certain witnesses' testimony; (2) ineffective assistance of trial counsel in that his attorney (a) failed to investigate and present exculpatory physical evidence regarding blood on Nguyen's shirt, (b) failed to object to the prosecutor's improper cross-examination of Nguyen, (c) failed to object to the prosecutor's improper closing argument, and (d) failed to ensure that the jury selected was fair and impartial.  This Court issued an Order to Show Cause.

## ARGUMENT

## PETITIONER FAILED TO EXHAUST STATE REMEDIES

Petitioner failed to exhaust state remedies for all claims, none of which was included in his petition for review in the California Supreme Court, and none of which has yet been resolved by his petition for writ of habeas corpus in the California Supreme Court.  Petitioner's failure to exhaust his state remedies bars federal habeas corpus relief.  28 U.S.C. § 2254(b)(1).  Thus, the petition as presently constituted, containing no exhausted claims, must be dismissed.

To merit federal habeas review, a petitioner must first exhaust state remedies for his claims.  That is, before seeking federal collateral review, a petitioner must first present his claims to the highest court of his state.  *See Duncan v. Henry*, 513 U.S. 364 (1995) (per curiam); *see* 28 U.S.C. § 2254(b)(1)(A).  "A petitioner has satisfied the exhaustion requirement if (1) he has 'fairly presented' his federal claim to the highest state court with jurisdiction to consider it, or (2) he demonstrates that no state remedy remains available."  *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).

Petitioner has presented his claims to the California Supreme Court, but they have not yet been resolved.  Accordingly, petitioner has failed to exhaust his claims.  *Id*.

---

2.  The history of petitioner's state court habeas cases is set forth at pages 4 and 5 of the petition for writ of habeas corpus filed in this Court.

**CONCLUSION**

For the foregoing reasons, respondent respectfully requests that this Court dismiss the petition for writ of habeas corpus for failure to exhaust state remedies. Staying the proceedings is not an option since there are no exhausted claims before the Court.

Dated: August 20, 2007

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

GREGORY A. OTT
Deputy Attorney General

/s/ Allen R. Crown
ALLEN R. CROWN
Deputy Attorney General

Attorneys for Respondent

Motion to Dismiss For Failure to Exhaust State Remedies - *Nguyen v. Felker,* C 07-2479 MHP (pr)

**EXHIBIT A**

Westlaw.

Not Reported in Cal.Rptr.3d                                                                                                Page 1

Not Reported in Cal.Rptr.3d, 2006 WL 533834 (Cal.App. 1 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

▶
People v. Nguyen
Cal.App. 1 Dist.,2006.
Only the Westlaw citation is currently available.
California Rules of Court, rule 8.1115, restricts citation of unpublished opinions in California courts.
Court of Appeal, First District, Division 2, California.
The PEOPLE, Plaintiff and Respondent,
v.
Tri Dung NGUYEN, Defendant and Appellant.
No. A107996.
(Alameda County Super. Ct. No. C144700).

March 6, 2006.

Office of the Attorney General, Allen R. Crown, San Francisco, CA, for Plaintiff-Respondent.
First District Appellate Project, San Francisco, CA, James Kyle Gee, Oakland, CA, for Defendant-Appellant.
BUSCH, J.[FN*]

FN* Judge of the Superior Court of San Francisco County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*1 A jury convicted defendant Tri Dung Nguyen of first degree murder involving the personal use of a deadly weapon (Pen.Code, §§ 187, subd. (a), 12022, subd. (b)(1)). After the trial court sentenced him to state prison for a total term of 26 years to life, defendant filed a timely notice of appeal. His sole claim of error concerns alleged error in the admission of certain evidence. The necessary details are as follows:

The victim, Quyen Bui, had a tempestuous and violent relationship with defendant. Often drunk, defendant once smashed a bottle over her head and repeatedly made threats about killing or harming her. On June 4, 2002, two days after he was arrested for threatening Ms. Bui, she obtained a restraining order against defendant. Five days later, on June 9, 2002, neighbors observed defendant and Ms. Bui engage in a heated argument. The neighbors called 911 for police. When officers arrived they found Ms. Bui dead from multiple stab wounds. Defendant was lying atop her body, and a bloody knife, which was the likely murder weapon, lay nearby. Defendant admitted killing Ms. Bui. According to his version, she initiated the fight, she produced the knife, she stabbed him first, and she followed him when he tried to flee.

The relationship between defendant and Ms. Bui generated a number of statements by Ms. Bui. Some were made directly to a police officer; the rest were uttered during recorded 911 calls. The prosecution moved in limine to "introduce defendant's prior acts of violence against the victim" pursuant to Evidence Code sections 1101, subdivision (b) and 1109. The " prior uncharged acts" occurred on March 26, 1999, October 17, 2001, and June 2, 2002. [FN1] Defendant countered with his own motion to exclude the victim's statements on those dates on the ground that admission would violate defendant's constitutional confrontation right as recently construed by the United States Supreme Court in *Crawford v. Washington, supra,* 541 U.S. 36. After hearing brief argument on the prosecutor's motion, the trial court granted it, concluding "the prescriptions of Crawford ... do not apply." But the court did apply the so-called "forfeiture rule" of *Crawford*-that by killing Ms. Bui, defendant forfeited the right to raise a confrontation clause challenge to the admission of hearsay statements made by her to police officers.

FN1. During argument on the motion, the prosecutor initially told the court that " [t]he 911 call I did not include in my motion" because he believed they did not involve "testimony," as that term is used in *Crawford v. Washington* (2004) 541 U.S. 36, because they were not the result of "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://web2.westlaw.com/print/printstream.aspx?sv=Split&prft=HTMLE&fn=_top&mt=C...   8/16/2007

Not Reported in Cal.Rptr.3d                                                                                            Page 2
Not Reported in Cal.Rptr.3d, 2006 WL 533834 (Cal.App. 1 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

structured questioning." However, in the argument as it developed, it appears the 911 call was implicitly accepted by all as covered by the motion and by the court's eventual ruling. Although neither of the motions addressed the 911 call made by the victim on June 9, the day she died, it also came up in the in limine proceedings. We therefore treat it too as covered by the ruling.

The evidence allowed before the jury by this ruling can be summarized as follows:

*March 26, 1999.* Former Alameda Police Officer Nickl testified that on this date she was dispatched to investigate a domestic violence dispute. Nickl spoke with Ms. Bui, who related that she had gotten into a fight with defendant after he had consumed a great deal of beer. Defendant hit and kicked her before she summoned police. Ms. Bui declined medical treatment and would not press charges against defendant.

*October 17, 2001.* Oakland Police Officer Jim testified that on this date he was dispatched to investigate a report of domestic battery. Jim spoke with Ms. Bui, who related that defendant had repeatedly hit her, stopping only when she threatened to call police. Jim observed no visible proofs of injury.

*\*2 June 2, 2002.* A recording of the 911 call made on this date was played for the jury. The voices on the tape belonged to defendant, Ms. Bui, a friend of defendant and Ms. Bui named Tran, the 911 dispatcher, and a translator. The call commenced with defendant stating: "I get problem with my family. I want to go in jail." A translator came on the line and spoke with Tran, who stated that defendant had been drinking, "he mad his wife. He wanted to hurt his wife you know. He want to go to the jail." At the dispatcher's request, Ms. Bui came on the line and, speaking through the interpreter, stated: "[S]he said that the ... man who wants to go in jail.... [H]er husband makes too many trips to Viet Nam to visit his ex-girlfriend.... [A]nd that's what they are upset about.... And when her husband went back to the United States he argued with her and beat her up.... Today her husband did not beat her up but used the gun and threatened to kill her." "[H]er husband did not use the gun to threaten her today, but did use the gun to threaten to kill her and her children on May 26.... Today her husband does not have the gun." "[T]he police need to rush over because he is trying to kill her now."

Alameda Police Officer Germany testified that she was dispatched to Ms. Bui's home at approximately 9:15 p.m. to investigate a family dispute. Germany observed defendant banging on a security gate over the front door. When Ms. Bui came to the door, defendant spoke with her angrily. Because defendant was "very drunk," he was arrested. He told Germany: "I want to go to jail. I called you. When I get out of jail, I will kill her." Later that night Germany returned to Ms. Bui's house and spoke with her. Ms. Bui stated defendant "had always been violent towards her, and that he had threatened to kill her several times in the past by shooting her." Before he was arrested, defendant told Ms. Bui he would come back and kill her and the children.

*June 9, 2002.* Ms. Bui called 911 at approximately 3 a.m. This tape too was played for the jury. Ms. Bui told the dispatcher that her boyfriend, whom she identified as "Tri," "broke my window.... He ... go in jail a couple day ago.... He ... come back. He want to kill me."

"Prior to *Crawford,* the admission of a hearsay statement under a firmly-rooted exception to the hearsay rule or when there were indicia of reliability did not violate a defendant's right of confrontation. ( *Ohio v. Roberts* (1980) 448 U.S. 56, 66....) After *Crawford,* a 'nontestimonial' hearsay statement continues to be governed by the *Roberts* standard, but the admission of a 'testimonial' hearsay statement constitutes a violation of a defendant's right of confrontation unless the declarant is unavailable to testify at trial and the defense had a prior opportunity for cross-examination." (*People v. Corella* (2004) 122 Cal.App.4th 461, 467.) "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." (*Crawford v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d

Page 3

Not Reported in Cal.Rptr.3d, 2006 WL 533834 (Cal.App. 1 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

*Washington, supra,* 541 U.S. 36, 68-69.) The *Crawford* court declined to "spell out a comprehensive definition of 'testimonial,' " but it did state that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." (*Crawford v. Washington, supra,* 541 U.S. 36, 68.)

*3 The trial court ruled "the statements to Officer Germany ... are admissible under [section] 1370 of the Evidence Code" and "are not subject to the *Crawford* prescription [sic ]." FN2 Under what circumstances hearsay statements elicited by police questions and offered pursuant to section 1370 are testimonial within the meaning of *Crawford* is an issue pending in our Supreme Court. (E.g., *People v. Kilday* (2004) 123 Cal.App.4th 406, review granted Jan. 19, 2005, S129567; *People v. Caudillo* (2004) 122 Cal.App.4th 1417, review granted Jan. 12, 2005, S129212; *People v. Adams* (2004) 120 Cal.App.4th 1065, review granted Oct.13, 2004, S127373; *People v. Cage* (2004) 120 Cal.App.4th 770, review granted Oct. 13, 2004, S127344.)

> FN2. Although the court spoke only to Officer Germany's anticipated testimony, the prosecutor's motion also sought approval for admission of similar testimony by Officers Nickl and Jim. The parties implicitly accept the ruling as to Officer Germany as also applying to Nickl and Jim. So do we.
> Defendant does not challenge the ruling that the evidence was made admissible by Evidence Code section 1370. His sole claim is based entirely on confrontation clause grounds. We further note that, apart from a couple of general references and a conclusory statement, defendant does not develop an argument concerning the admissibility of the testimony of Officers Nickl and Jim that is supported by appropriate citation to the record. Any challenge to those parts of the trial court's ruling allowing the officers' testimony is treated as waived. (E.g., *People v. Stanley* (1995) 10 Cal.4th 764, 793; *People v.*

*Rodrigues* (1994) 8 Cal.4th 1060, 1116, fn. 20.)

One Court of Appeal found no *Crawford* violation when a victim was asked questions by a police officer at the scene in response to a 911 call. " Preliminary questions asked at the scene of a crime shortly after it has occurred do not rise to the level of an 'interrogation.' Such an unstructured interaction between officer and witness bears no resemblance to a formal or informal police inquiry that is required for a police 'interrogation' as that term is used in *Crawford*." (*People v. Corella, supra,* 122 Cal.App.4th 461, 469; see also *People v. Morgan* (2005) 125 Cal.App.4th 935, 947 & fn. 1 [agreeing with *Corella* that telephone caller's statements not testimony because "made in an unstructured setting [that] does not resemble the police interrogation of concern in *Crawford*."].) This logic applies here, with respect to the statements recounted by Officer Germany prior to defendant's arrest on June 2, 2002. The questions are posed, not by a police officer, but by the dispatcher (who concededly told the victim "this is the police department") and by the interpreter. The general tenor of the questions does not appear aimed at eliciting information incriminating to defendant (such as "What did he do to you?"), but rather at the understandable desire to determine precisely what was happening, whether an immediate response was required, and what officers would confront if sent to the scene. Moreover, it is significant that it was defendant who initiated the call with the purpose of getting himself taken to jail. What occurred was not a "police interrogation" as that term was used in *Crawford*.FN3

> FN3. However, this conclusion cannot be extended to Officer Germany's testimony about the June 2 statements made by Ms. Bui after defendant had been arrested and Germany returned to speak with Ms. Bui. Once Officer Germany heard defendant state "When I get out of jail, I will kill her," she went back to ask Ms. Bui "if he had, in fact, threatened to kill her to her face." The language barrier caused Germany to use a translator on a conference telephone

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d  
Not Reported in Cal.Rptr.3d, 2006 WL 533834 (Cal.App. 1 Dist.)  
**(Cite as: Not Reported in Cal.Rptr.3d)**

Page 4

call. It was under these circumstances Germany heard Ms. Bui state that defendant "had threatened several times in the past by [*sic:* with] shooting her." With defendant under arrest and in jail, this satisfies one of the tests for determining whether a statement is testimonial-i.e., a statement " 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " (*Crawford v. Washington, supra,* 541 U.S. 36, 52; see *Stancil v. U.S.* (D.C.App.2005) 866 A.2d 799, 813 [following *People v. Kilday, supra:* "once the scene has been secured, and once the officer's attention has turned to investigation and fact-gathering, statements made by those on the scene, in response to police questioning, tend in greater measure to take on a testimonial character, and they are thus ordinarily inadmissible under the Confrontation Clause."].) Germany's question could have no purpose other than collecting evidence for later use against defendant.

If the forfeiture principle is not sufficient to reach this particular statement, its admission would thus be error. Viewed in light of the entire record, however, its admission would not require reversal. Ms. Bui's statement merely replicated what she had already stated on the 911 call and what she had told Mr. Tran the next day. Moreover, the significance of this statement is considerably overshadowed by the fact that defendant himself made the same statement ("When I get out of jail, I will kill her") to Officer Germany when he (defendant) was arrested earlier that day. In light of the extensive admissible and nonhearsay testimony of the violent history between defendant and the victim, this piece of cumulative evidence would be harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

In any event, even if it is assumed that the statements were testimonial, we would have to address the trial court's ruling that the statements were nevertheless outside *Crawford* by reason of the forfeiture rule. This rule, which the *Crawford* court expressly accepted, "extinguishes confrontation claims on essentially equitable grounds." (*Crawford v. Washington, supra,* 541 U.S. 36, 62.) The authority cited by the court stands for the equitable principle that a defendant who causes a witness's unavailability for cross-examination through his own wrongful act may not assert a confrontation violation when " competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts." ( *Reynolds v. United States* (1878) 98 U.S. 145, 158.) The forfeiture rule is also before our Supreme Court. (*People v. Giles* (2004) 123 Cal.App.4th 475, review granted Dec. 22, 2004, S129852; *People v. Jiles* (2004) 122 Cal.App.4th 504, rev. granted Dec. 22, 2004, S128638.)

*4 Defendant argues that the forfeiture rule should not be applied here because he did not act with the specific intent of preventing Ms. Bui from appearing as a witness. It is true that *Crawford* was not a murder case, but that does not furnish a basis for not applying the forfeiture rule; the court explicitly stated it accepted the rule, yet it did not hint that its application would vary with or depend upon the offense charged against the defendant. If the forfeiture rule is to implement the principle that "no one shall be permitted to take advantage of his own wrong" (*Reynolds v. United States, supra,* 98 U.S. 145, 159), the motivation for the wrongdoing, particularly murder, must be deemed irrelevant. Moreover, subsequent to *Crawford,* the forfeiture rule has been applied to a defendant charged with murdering his wife. (*U.S. v. Garcia-Meza* (6th Cir.2005) 403 F.3d 364; *Gonzalez v. State* (Tex.App.2004) 155 S.W.3d 603; cf. *People v. Abraham* (1986) 185 Cal.App.3d 1221 [rejecting claim of prejudice due to unavailability of witness's testimony when defendant killed witness].) Therefore, even if the challenged hearsay statements were deemed "testimonial," it was not error to admit them.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d                                                                                     Page 5
Not Reported in Cal.Rptr.3d, 2006 WL 533834 (Cal.App. 1 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

The judgment of conviction is affirmed.

We concur: KLINE, P.J., and LAMBDEN, J.
Cal.App. 1 Dist.,2006.
People v. Nguyen
Not Reported in Cal.Rptr.3d, 2006 WL 533834
(Cal.App. 1 Dist.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B



# CALIFORNIA APPELLATE COURTS
### Case Information

- Supreme Court
- Welcome
- Search
- E-mail
- Calendar
- Help
- Opinions

c|c home

**Supreme Court**

Change court

Court data last updated: 08/16/2007 10:53 AM

Case Summary   Docket   Briefs
Disposition   Parties and Attorneys   Lower Court

### Docket (Register of Actions)

**NGUYEN (TRI) ON H.C.**
Case Number S152044

| Date | Description | Notes |
|---|---|---|
| 04/23/2007 | Petition for writ of habeas corpus filed | Tri Nguyen, Petitioner in Pro Per |
| 04/23/2007 | Exhibit(s) lodged | 1 volume |

**Click here** to request automatic e-mail notifications about this case.

© 2004 Judicial Council of California