1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  ALLEN R. CROWN
   Deputy Attorney General
6  State Bar No. 56818
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA 94102-7004
     Telephone: (415) 703-5847
8    Fax: (415) 703-1234
     Email: Allen.Crown@doj.ca.gov
9
   Attorneys for Respondent
10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                   SAN FRANCISCO DIVISION

14

15  **TRI DUNG NGUYEN,**                        C 07-2479 MHP (pr)

16                              Petitioner,

17          **v.**

18  **TOM FELKER, Warden,**

19                              Respondent.

20

21     **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

22

23

24

25

26

27

28

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   PEGGY S. RUFFRA
    Supervising Deputy Attorney General
5   ALLEN R. CROWN
    Deputy Attorney General
6   State Bar No. 56818
      455 Golden Gate Avenue, Suite 11000
7     San Francisco, CA 94102-7004
      Telephone: (415) 703-5847
8     Fax: (415) 703-1234
      E-mail:  Allen.Crown@doj.ca.gov
9
    Attorneys for Respondent
10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15  **TRI DUNG NGUYEN,**                    C 07-2479 MHP (pr)

16                            Petitioner,   **MEMORANDUM OF POINTS
                                            AND AUTHORITIES IN**
17       **v.**                             **SUPPORT OF ANSWER**

18  **TOM FELKER, Warden,**

19                            Respondent.

20

21                    **INTRODUCTION**

22          California state prisoner Tri Dung Nguyen  has filed a first amended petition for writ of

23  habeas corpus in this Court raising the following federal constitutional claims: one, the admission

24  of testimonial hearsay violated his rights under the Sixth Amendment's Confrontation Clause; two,

25  he received ineffective assistance of appellate counsel in that appellate counsel failed to properly

26  raise a Confrontation Clause claim regarding certain witnesses' testimony; and three, he received

27  ineffective assistance of trial counsel in that his attorney (a) failed to investigate and present

28  exculpatory physical evidence regarding blood on petitioner's shirt, (b) failed to object to the

1 prosecutor's improper cross-examination of petitioner, (c) failed to object to the prosecutor's

2 improper closing argument, and (d) failed to ensure that the jury selected was fair and impartial.

3 **STATEMENT OF THE CASE**

4 On March 18, 2003, the District Attorney filed an information in Alameda County

5 Superior Court accusing petitioner, Tri Dung Nguyen, of murder in violation of California Penal

6 Code § 187(a), a serious felony within the meaning of California Penal Code § 1192.7(c), and a

7 violent felony within the meaning of California Penal Code § 667.5(c). It was further alleged that

8 petitioner personally used a deadly weapon within the meaning of California Penal Code

9 §12022(b)(1), causing the murder to be a serious felony within the meaning of California Penal

10 Code § 1192.7(c)(23), and that petitioner personally and intentionally inflicted great body injury

11 within the meaning of California Penal Code § 1203.075. CT 81-82.

12 On July 27, 2004, the jury returned a verdict of guilty of first degree murder and further

13 found that petitioner personally used a deadly weapon within the meaning of California Penal Code

14 § 12022(b)(1). CT 172, 175.

15 On August 27, 2004, the court sentenced petitioner to state prison for a term of twenty-six

16 years to life, consisting of twenty-five years to life plus a one-year enhancement under California

17 Penal Code § 12022(b)(1). CT 258-60.

18 On March 6, 2006, the California Court of Appeal, First Appellate District, affirmed the

19 judgment. Exh. G.

20 On May 17, 2006, the California Supreme Court denied petitioner's petition for review.

21 Exh. I.

22 On January 18, 2007, petitioner filed a petition for writ of habeas corpus in Alameda

23 County Superior Court. Exh. J. On January 18, 2007, Alameda County Superior Court denied the

24 petition for writ of habeas corpus. Exh. K.

25 On March 16, 2007, petition filed a petition for writ of habeas corpus in the California

26 Court of Appeal. Exh. L. On April 11, 2007, the California Court of Appeal denied the petition for

27 writ of habeas corpus. Exh. M.

28 On April 23, 2007, petitioner filed a petition for writ of habeas corpus in the California

1  Supreme Court.  Exh. N.  On September 12, 2007, the California Supreme Court denied the petition

2  for writ of habeas corpus.  Exh. O.

3          On August 17, 2007, petitioner filed a first amended petition for writ of habeas corpus in

4  this Court.

5          On October 22, 2007, this Court issued an order to show cause.

6                          **STATEMENT OF FACTS**[1]

7      **Prosecution Case**

8          Thanh Tran was petitioner's friend since 1993 and knew Quyen Bui since 1997.

9  Sometimes petitioner and Ms. Bui argued.  Once petitioner said that he would hit her.  Then he hit

10  her on the head with a beer bottle in front of five or six people.  The bottle broke.  RT 204-07.  In

11  the past, petitioner had told Mr. Tran that "If she does not love me any more, then both of us will

12  die."  RT 208, 214.  He also told Mr. Tran that if he were to die, then he wanted Ms. Bui to die also,

13  so that they could be together.  He asked Mr. Tran to take care of the children if petitioner and Ms.

14  Bui both died.  Mr. Tran thought that petitioner was joking.  RT 229, 236, 240-41.

15          On June 2, 2002, Mr. Tran was with petitioner and Ms. Bui at her residence.  They drank

16  beer and sang.  Petitioner told Ms. Bui that he wanted to return and stay with her.  She disagreed,

17  saying that she allowed him to come to visit the children and see friends, so he should not ask for

18  more.  Petitioner became furious and called the police.  RT 209-14.  Petitioner told the dispatcher

19  that he wanted to be taken to jail.  Mr. Tran told the dispatcher that petitioner got mad at his wife

20  and wanted to hurt her, so petitioner wanted to go to jail.  RT 243-45; Exh. 29A 1-3.  Officers

21  Germany and Morton responded to a possible family dispute at Ms. Bui's residence.  They found

22  petitioner at the security gate to Ms. Bui's door and found Mr. Tran nearby.  Petitioner smelled of

23  alcohol and was angrily banging on the security gate, saying that his ex-girlfriend would not allow

24  him into the residence.  Ms. Bui came to the security gate, but did not open it.  Petitioner spoke to

25  her in Vietnamese and then told the officers: "I want to go to jail.  Take me to jail."  They took

26  petitioner and Mr. Tran into custody.  RT 246-51.  In the police vehicle on the way to jail, petitioner

27

28          1.  The state Court of Appeal's summary of the facts is set forth at Exh. G, 1-3.

1  said: "I want to go to jail. I called you. When I get out of jail, I will kill her." RT 250, 272.

2  Officer Germany returned to Ms. Bui's residence later that night and talked to her about petitioner.

3  RT 251.

4        On June 4, 2002, an Alameda County Superior Court Judge issued an order that petitioner

5  was not to harm, annoy, or molest Ms. Bui. RT 275.

6        On June 9, 2002, at about 3 a.m., one of Ms. Bui's neighbors, who spoke Chinese but not

7  Vietnamese, heard fighting and yelling in Vietnamese. A man and a woman were arguing verbally,

8  but not physically. The woman ran or walked quickly toward the backyard, followed by the man.

9  After they moved back and forth, where the neighbor could see only their legs, there was a loud

10  scream and nothing more. RT 111-14, 116-18, 124-25. Another neighbor, whom Ms. Bui called

11  "Auntie Five," heard Ms. Bui yelling in Vietnamese for Auntie Five to save her and help her. That

12  neighbor saw the two people fighting and holding each other. She called 911, but did not say

13  anything. Then she ran to the Chinese-speaking neighbor's residence and asked her to call the

14  police. RT 126, 133-42.

15        Two brothers, who lived in the residence behind Ms. Bui's residence, heard a woman

16  yelling in a loud, scary voice: "Oh my God. Oh, my God." There was a very fast banging on their

17  front door. She also yelled in Vietnamese, "Somebody help me." RT 151-56, 276-78, 281. The

18  woman was Ms. Bui. She and petitioner were pushing back and forth, and he was chasing her and

19  following her closely. She tried to defend herself by pushing him away with both hands. He

20  grabbed her with one hand and stabbed her repeatedly with a knife that he held in the other hand.

21  She had no weapon and did not try to stab him. Her voice decreased in volume until she lost energy,

22  fell to the ground in front of the brothers' door, and said nothing else. RT 157-66, 178-79, 181, 280-

23  90. Petitioner appeared to be drunk. RT 309. Petitioner stood over her, held the knife in one hand,

24  and tried to force it into his stomach with the other hand, while saying in Vietnamese: "I kill you,

25  now I'm going to kill myself." (RT 291-294.) After the brothers called 911, Ms. Bui was lying on

26  the ground not moving. Petitioner was also lying on the ground, but was moving and said: "I love

27  you, baby. I love you, baby." RT 170-72, 295-96.

28        When police responded to the scene soon after, "Auntie Five" directed them. They found

Memorandum of Points and Authorities in Support of Answer - *Nguyen v. Felker*, C 07-2479 MHP (pr)

4

the window of Ms. Bui's residence smashed, her front door open, no one inside, and no blood inside or on the glass. RT 55-60, 97-99, 107, 142. About thirty feet down the walkway to the backyard, there was blood splattering on the ground. In front of the brothers' residence was a huge amount of blood, and in front of their door were the blood-covered bodies of petitioner and Ms. Bui. RT 61-65, 100-01. Ms. Bui's body was sitting against the wall with her blouse pulled up above her breasts and no bra visible. She was covered with stab wounds. Her eyes and mouth were closed, and she was not conscious. She had no pulse and was not breathing. RT 66-67, 69, 102. Petitioner's body was lying partially across her right side with his mouth around her right nipple. He had a pulse and was breathing. RT 67-69, 102. The officers pulled petitioner off her, laid her flat on her back, and administered CPR to her without recovery. Petitioner rolled onto his stomach, revealing a bloody knife with a bent blade, and said: "I want to die. I want to die. I want to die. Just kill me." RT 69-70, 102-04, 106. Petitioner was handcuffed and later taken to the hospital. RT 71, 104.

An autopsy revealed that Ms. Bui died from multiple stab and incised wounds. There were four wounds in the head and neck area, twenty-six wounds to the torso, three wounds to the right arm, and seventeen wounds on the left arm that were consistent with defensive wounds from holding the left arm up to ward of an incoming weapon, such as the knife that was found by petitioner. The totality of the wounds caused death, but the more severe injuries were to the ribs, lungs, arteries, chest cavity, heart, liver, and bowel. RT 82-85, 88, 93.

Ms. Bui had made a domestic violence report about petitioner, indicating that he came to her former residence on March 26, 1999, around 2:30 a.m., consumed a large quantity of alcohol, got into an argument with her, and became physical with her when she refused to let him come to bed with her. When she threatened to call the police, he left. The responding officer saw a bruise on her left arm, where she said that petitioner hit her. She did not want petitioner arrested. RT 184-87, 189.

On another occasion, Ms. Bui's brother had made a domestic battery complaint against petitioner, and Ms. Bui gave a statement. She indicated that petitioner was at her former residence on October 17, 2001, shortly after midnight when petitioner became angry with her, hit her, and caused her to fall backwards. Petitioner continued to hit her until she threatened to call the police,

1    and then he left.  She complained of pain to her neck and to her head behind her right ear.  The

2    responding officer felt that Ms. Bui was tentative and not bold.  She did not want to press charges.

3    RT 194-99, 201, 203.

4          On June 2, 2002, when petitioner called 911, after he and Mr. Tran talked to the dispatcher

5    about petitioner's wanting to go to jail, Ms. Bui told the dispatcher that petitioner made too many

6    trips to Vietnam to visit his ex-girlfriend, that when he came back to the United States petitioner

7    argued with her and beat her up, that on May 26 he used a gun and threatened to kill her and her

8    children, and that today petitioner did not beat her up and did not have a gun but was drunk,

9    harassing her family, and making the babies cry.  RT 243-45; Exh. 29A 4-9.

10          On June 2, 2002, when Officer Germany returned to Ms. Bui's residence to talk to her,

11   Ms. Bui was scared and tried to explain about violent things that had happened with petitioner.  RT

12   251-52, 257.  Through an interpreter, Ms. Bui said that petitioner was her ex-boyfriend and the

13   father of her daughters.  They had been having problems, but she allowed him to come over that

14   evening.  She, petitioner, and Mr. Tran drank beer and talked.  She and petitioner got into a heated

15   argument.  When she told petitioner that she was going to call the police, petitioner said that he

16   would call the police to show her that he was not scared.  Ms. Bui said that petitioner did not

17   threaten to kill her that night, but that petitioner said that, if he was taken to jail, when he was

18   released he would come back and kill her and her children.  When petitioner and Mr. Tran went

19   outside, Ms. Bui said that she locked the security gate, locking them both out.  RT 253-57.

20          On June 9, 2002, Ms. Bui called 911 briefly to report that petitioner had gotten out of jail,

21   had broken her window, and wanted to kill her.  RT 107-09; Exh. 27A.

22      **Defense Case**

23          Petitioner testified that he and Ms. Bui argued a lot and that she was physically violent

24   with him many times from which at least three times he got scars.  Petitioner would never fight back.

25   But petitioner did start violence with her, and Mr. Tran's testimony about petitioner's hitting her

26   with a beer bottle was true.  RT 342-48.

27          On June 2, 2002, petitioner wanted to go to jail and said on the 911 tape that he wanted

28   to kill somebody.  Ms. Bui threw a remote at petitioner and pushed him.  He did not want to hit her

1  or have anything happen between them, so he called the police.  Petitioner denied that in the police

2  car he threatened to kill Ms. Bui and her children.  RT 348-49.

3        On June 9, 2002, petitioner and Ms. Bui were at a wedding where they drank, went to a

4  club where they drank, and went to her house where they argued.  Petitioner went into the yard to

5  have a smoke.  When he knocked on the window, Ms. Bui would not let him in.  She kept yelling

6  fuck you, kicked the window, and got her leg stuck in the broken window.  Petitioner went back

7  inside through the window.  She kept yelling at him, so he went to lie down in the bedroom.  She

8  yelled at him to get out, kicked him, and pulled at him.  She threatened to call the police, to say that

9  he had broken her window, and to see who they would believe since she had a restraining order

10 against him.  She called the police.  RT 350-54.  She returned to the bedroom, she kicked him, and

11 they struggled.  She stabbed him twice in the apartment with a kitchen knife.  He pushed her away

12 and ran outside.  She pursued him into the backyard, grabbed him, and stabbed him repeatedly.  He

13 pushed her away, ran to the neighbors' door and pounded on it, but no one opened the door.  RT

14 355-57.  She caught him again, grabbed him, and tried to stab him some more.  He grabbed the

15 knife.  They struggled.  He was becoming too weak from his wounds to resist her and was afraid that

16 if he went to the ground she would stab him to death.  So he stabbed her to death in self-defense.

17 Then he stabbed himself, saying: "Quyen, Quyen, don't die.  If you die, I will die with you."  RT

18 358-61.  Petitioner killed her and missed her.  RT 348.

19        Petitioner denied that he had said to Ms. Bui that he would kill her and the children.  He

20 also denied that he had said in the police car:  "When I get out of jail, I'm going to come back and

21 kill her."  RT 368-69.  Petitioner admitted that he got furious with Ms. Bui every time that she told

22 him that he could not move in with her, but that was not the reason that he hit her in the head with

23 the beer bottle.  He did that because she would not shut up.  RT 371-72.

24        Petitioner's blood alcohol level on June 9, 2002, at 4:11 a.m. was .216.  An expert on the

25 effects of alcohol on the human body opined that above a blood alcohol level of .18, there can be

26 disturbances of perception that affect understanding.  RT 328-29, 331, 333-34.

27        **Rebuttal Evidence**

28        Trang Lam testified that she had lived in the same house with petitioner and Ms. Bui in

1    2000 and 2001.  Petitioner and Ms. Bui argued.  Ms. Lam saw petitioner cut himself on his arm.  He

2    said that he would scar his arm every time that they argued.  Petitioner drank all the time.  Once

3    when petitioner and Ms. Bui had an argument, petitioner prevented Ms. Bui from calling the police

4    by breaking the phone.  Another time, Ms. Bui's brother stopped petitioner from hitting her.  Ms.

5    Lam never saw Ms. Bui harm petitioner.  RT 375-80.

6                                    **STANDARD OF REVIEW**

7           A federal court may grant a writ of habeas corpus to a state prisoner only if the state

8    court's rulings "resulted in a decision that was contrary to, or involved an unreasonable application

9    of, clearly established Federal law, as determined by the Supreme Court of the United States" or

10   were "based on an unreasonable determination of the facts in light of the evidence presented" in the

11   state courts.  28 U.S.C. § 2254(d).  Under the "contrary to" clause, a state court decision is contrary

12   to federal law if it "contradicts the governing law set forth in our cases" or if it "confronts a set of

13   facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at

14   a result different from our precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also*

15   *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  That test does "not require citation of our cases

16   – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the

17   result of the state-court decision contradicts them."  *Early,* at 8.

18          The ultimate controlling authority is the holding of the Supreme Court's cases at the time

19   of the relevant state-court decision, not the dicta.  *Williams v. Taylor*, 529 U.S. at 412.  The state

20   courts are presumed to "know and follow the law," and the standard for evaluating state-court

21   rulings, which are given the "benefit of the doubt," is "highly deferential."  *Woodford v. Visciotti*,

22   537 U.S. 19, 24 (2002) (per curiam).  "A federal court may not overrule a state court for simply

23   holding a view different from its own, when the precedent from this Court is, at best, ambiguous."

24   *Mitchell v. Esparza,* 540 U.S. 12, 17 (2003).  In other words, "[i]f no Supreme Court precedent

25   creates clearly established federal law relating to the legal issue the habeas petitioner raised in state

26   court, the state court's decision cannot be contrary to or an unreasonable application of clearly

27   established federal law."  *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004).

28          In order to warrant habeas relief, the state court's application of clearly established federal

1    law must be not merely erroneous, incorrect, or even "clear error," but "objectively unreasonable."

2    *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003); *see also Williams v. Taylor*, 529 U.S. at 409; *Woodford*

3    *v. Visciotti*, 537 U.S. at 24. It is the habeas petitioner's burden to make that showing. *Woodford*,

4    at 25. In the same way, a "decision adjudicated on the merits in a state court and based on a factual

5    determination will not be overturned on factual grounds unless objectively unreasonable in light of

6    the evidence presented in the state-court proceeding." *Miller-El v. Cockrell,* 357 U.S. 322, 340

7    (2003). State court factual determinations are presumed correct unless rebutted by clear and

8    convincing evidence. 28 U.S.C. § 2254(e)(1).

9         Harmless error review is no less exacting. An error can justify overturning the conviction

10    only if it had a "'substantial and injurious effect or influence in determining the jury's verdict.'"

11    *Penry v. Johnson*, 532 U.S. 782, 795 (2001), *quoting Brecht v. Abrahamson*, 507 U.S. 619, 637

12    (1993). The *Brecht* standard applies to all § 2254 cases, regardless of the type of harmless error

13    review conducted by the state courts. *Fry v. Pliler*, ___ U.S. ___, 127 S.Ct. 2321, 2328 (2007).

14         When there is no reasoned opinion from the highest state court to consider petitioner's

15    claims, the federal court looks to the last reasoned state court opinion. *See Ylst v. Nunnemaker*, 501

16    U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

17         Petitioner's claims, as identified below, fail as a matter of law under the AEDPA

18    standards. The first amended petition should accordingly be denied.

19    **CLAIM ONE**

20    **PETITIONER WAS NOT DENIED HIS RIGHTS UNDER THE SIXTH
AMENDMENT'S CONFRONTATION CLAUSE**

21

22         In claim one, petitioner contends that the admission of testimonial hearsay violated his

23    rights under the Sixth Amendment's Confrontation Clause. Pet., 8-10; Ps & As, 1-2. This claim is

24    without merit because petitioner has failed to show that the state appellate court made an objectively

25    unreasonable application of clearly established United States Supreme Court precedent or that the

26    state appellate court decision was based upon an unreasonable determination of facts. Even if

27    petitioner had made such a showing, any error was harmless under the *Brecht* standard.

28         Petitioner argues that his conviction resulted from out-of-court statements of his murder

Memorandum of Points and Authorities in Support of Answer - *Nguyen v. Felker*, C 07-2479 MHP (pr)

1    victim to police officers and 911 dispatchers that were admitted over his objection in violation of

2    the Sixth Amendment's Confrontation Clause because he did not have an opportunity to confront

3    and cross-examine his victim.  The state appellate court found that the victim's calls to 911

4    dispatchers and statements to responding officers were both reliable and not testimonial, and were

5    therefore admissible under the criteria of *Crawford v. Washington*, 541 U.S. 36 (2004).  Exh. G, 3-5.

6    The state appellate court further reasoned under the *Crawford* decision that, even if all the victim's

7    statements were testimonial, they were admissible because petitioner forfeited his constitutional

8    rights to confrontation and cross-examination of the victim by reason of his wrongdoing in killing

9    her.  Exh. G, 6-7.  The fact that petitioner killed Ms. Bui was not disputed.  The testimony of

10   eyewitnesses was that she was not armed when petitioner stabbed her to death.  Petitioner's

11   testimony to the contrary was clearly refuted by the eyewitnesses, as was his testimony that she

12   stabbed him inside her apartment which was contrary to the physical evidence that no blood was

13   found inside her apartment.  Finally, the state court determined that even if some of Ms. Bui's

14   statements were inadmissible, they were cumulative of other statements that were admissible and

15   therefore were not prejudicial under the beyond-a-reasonable-doubt standard of *Chapman v.*

16   *California*, 386 U.S. 18, 24 (1967).  Exh. G, 5-6, fn. 3.  Petitioner does not cite United States

17   Supreme Court precedent to the contrary.

18           The state appellate court correctly applied federal constitutional standards in denying

19   petitioner's claim that his victim's statements were improperly admitted into evidence.  In *Crawford*,

20   the Supreme Court held that the right to confrontation applies only to "testimonial" statements.

21   *Crawford v. Washington*, 541 U.S. at 51-52.  "Statements are nontestimonial when made in the

22   course of police interrogation under circumstances objectively indicating that the primary purpose

23   of the interrogation is to enable police assistance to meet an ongoing emergency.  They are

24   testimonial when the circumstances objectively indicate that there is no such ongoing emergency,

25   and that the primary purpose of the interrogation is to establish or prove past events potentially

26   relevant to later criminal prosecution."  *Davis v. Washington*, 126 S.Ct. 2266, 2273-74 (2006).  In

27   *Davis*, the Supreme Court found statements made during a 911 call to be nontestimonial, because

28   the caller was speaking about events as they were happening rather than describing past events, the

1    caller was facing an ongoing emergency, and the elicited statements were necessary to resolve the

2    emergency. *Id*. at 2276.  The Supreme Court also found in the companion case that statements made

3    to officers when they responded to a domestic disturbance call were testimonial, because the

4    interrogation was part of an investigation into possibly criminal past conduct, and there was no

5    emergency in progress.  *Id*. at 2278.  In addition, the Supreme Court reaffirmed that "one who

6    obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation."

7    *Id*. at 2280.  The state court's application of these principles in this case was not unreasonable.

8           But even if there were error, it would not have had a substantial and injurious effect on

9    the jury's determination.  Petitioner's violent relationship with Ms. Bui was established by non-

10   hearsay evidence, his attack upon the unarmed victim was established by eyewitnesses, and his

11   claim of self-defense was belied by the eyewitnesses' testimony and the physical evidence as well

12   as his own statements that he would kill her.  Given that evidence, the jury was not likely to return

13   a verdict more favorable to petitioner in the absence of his victim's statements to the police and 911

14   dispatchers.  Under the *Brecht* standard, any error in the admission of those statements was harmless

15   because it did not have a substantial influence in determining petitioner's guilt.  The jury's decision

16   would have been the same.

17                                   **CLAIM TWO**

18   **PETITIONER WAS NOT DENIED HIS RIGHT TO EFFECTIVE
     ASSISTANCE OF APPELLATE COUNSEL**

19

20          In claim two, petitioner contends that he received ineffective assistance of appellate

21   counsel in that appellate counsel failed to properly raise a Confrontation Clause claim regarding

22   some of his murder victim's out-of-court statements.  Pet., 10-12; Ps & As, 2-8.  This claim is

23   without merit because petitioner has failed to show that the state appellate court made an objectively

24   unreasonable application of clearly established United States Supreme Court precedent or that the

25   state appellate court decision was based upon an unreasonable determination of facts.

26          Petitioner argues that his Confrontation Clause rights under *Crawford* were violated

27   because his appellate attorney waived them by failing to properly raise the issue as to some of

28   petitioner's victim's statements.  But petitioner was not prejudiced under the standard of *Strickland*

Memorandum of Points and Authorities in Support of Answer - *Nguyen v. Felker*, C 07-2479 MHP (pr)

1   v. *Washington*, 466 U.S. 668 (1984), because the state appellate court found that admission of

2   evidence of petitioner's similar statements to another officer and to Mr. Tran did not violate

3   petitioner's Confrontation Clause rights.  Exh. G, 4, fn. 2.  Therefore, even if appellate counsel had

4   raised the issue, it would not have been successful.

5          Petitioner has failed to demonstrate that the state superior court decision was contrary to

6   clearly established federal law or that the state appellate court decision was based upon an

7   unreasonable determination of facts.

8                                    **CLAIM THREE**

9          **PETITIONER WAS NOT DENIED HIS RIGHT TO EFFECTIVE
     ASSISTANCE OF TRIAL COUNSEL**

10

11         In claim three, petitioner contends that he received ineffective assistance of trial counsel

12  in that his attorney (a) failed to investigate and present exculpatory physical evidence regarding

13  blood on petitioner's shirt, (b) failed to object to the prosecutor's improper cross-examination of

14  petitioner, (c) failed to object to the prosecutor's improper closing argument, and (d) failed to ensure

15  that the jury selected was fair and impartial.  Pet., 12-21; Ps & As, 8-21.  This claim is without merit

16  because petitioner has failed to show that the state superior court made an objectively unreasonable

17  application of clearly established United States Supreme Court precedent or that the state superior

18  court decision was based upon an unreasonable determination of facts.  Moreover, due to the

19  overwhelming evidence of petitioner's guilt, he was not prejudiced by defense counsel's alleged

20  failures.

21         The United States Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668,

22  set forth the standards for establishing ineffective assistance of counsel.  Petitioner must first show

23  deficient performance by counsel.  This requires a showing counsel made errors so serious that

24  counsel was not functioning as the "counsel" guaranteed to a defendant by the Sixth Amendment.

25  *Id.*, 687.  Second, petitioner must show the deficient performance prejudiced the defense.  This

26  requires showing counsel's errors were so serious as to deprive petitioner of a fair trial.  *Id.*  With

27  respect to attorney competency, judicial scrutiny of counsel's performance must be highly

28  deferential.  Every effort must be made to "eliminate the distorting effects of hindsight" and to

1   evaluate the conduct from counsel's perspective at the time.  *Id*., 689.  A reviewing court must

2   indulge a strong presumption that counsel's conduct falls within the wide range of reasonably

3   professional assistance.  *Id*.

4         The state superior court denied petitioner's state habeas petition after reasonably

5   concluding that "Petitioner has not met his burden of establishing that his trial counsel's conduct

6   failed to conform to an objective standard of reasonable competence," noting that "the evidence of

7   Petitioner's guilt was overwhelming," and concluding that "Petitioner has not shown how he was

8   prejudiced or that his trial was fundamentally unfair as a result of [] acts or omissions of his trial

9   counsel."  Exh. K.  In making these findings, the state superior court correctly applied federal

10  constitutional standards in denying petitioner's claims of ineffective assistance of trial counsel.  That

11  is, petitioner has failed to demonstrate that the state superior court decision was contrary to clearly

12  established federal law or that the state superior court decision was based upon an unreasonable

13  determination of facts.  See *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam).

14        Petitioner first argues that his trial attorney provided ineffective assistance because he

15  failed to investigate and present physical evidence.  Pet., 12-15; Ps & As, 8-12.  Petitioner contends

16  that his trial attorney should have tested the blood on petitioner's T-shirt to determine if it was the

17  victim's blood or petitioner's blood.  Most likely it was both because both Ms. Bui and petitioner

18  had multiple stab wounds and there was a lot of blood at the murder scene where petitioner's T-shirt

19  was found.  The trial court denied defense counsel's post-trial request to test the bloody T-shirt on

20  that basis.  RT 478-80.  Despite petitioner's attempt in this Court to drag that same red herring

21  across the trail of evidence of his murder, the state superior court correctly applied the applicable

22  standards of United States Supreme Court precedent in finding in its habeas corpus decision that his

23  trial counsel did not provide ineffective assistance of counsel.  Exh. K.

24        Petitioner next argues that his trial attorney provided ineffective assistance because he

25  failed to object to prosecutorial misconduct during cross-examination of petitioner.  Pet., 15-17; Ps

26  & As, 12-15.  Petitioner contends that his trial attorney should have objected to the prosecutor's

27  questions regarding what petitioner's brother, Eric Nguyen, told the police about petitioner's

28  relationship with Ms. Bui on the night of the murder.  Petitioner presumes that Eric Nguyen was

1    unavailable to testify, rather than that the prosecutor chose not to present his testimony in light of

2    the effective cross-examination of petitioner that the prosecutor was able to conduct.  If the latter

3    were the case, then a defense objection would not have prevented the damaging information from

4    reaching the jury.  But even assuming arguendo that an objection would have been sustained, the

5    relationship between petitioner and Ms. Bui – including his previous threats to kill her – was in

6    evidence by other means.  That is, state superior court correctly applied the applicable standards of

7    United States Supreme Court precedent in finding in its habeas corpus decision that his trial counsel

8    did not provide ineffective assistance of counsel.  Exh. K.

9            Petitioner next argues that his trial attorney provided ineffective assistance of counsel

10   because he failed to object during the prosecutor's argument to the jury.  Pet., 17-18; Ps & As, 15-

11   17. Petitioner contends that his trial attorney should have objected to the prosecutor's argument that,

12   unlike the witnesses who spoke to the police after the murder, petitioner had two years until the time

13   of trial to fabricate his testimony.  There was, of course, nothing objectionable about the central

14   point of the prosecutor's argument that petitioner's version of the events was contrary to the

15   testimony of other witnesses and to the physical evidence at the scene.  The fact that petitioner had

16   time to think about the events and concoct a version that favored his innocence was merely stating

17   the obvious.  That petitioner failed to talk to the police at the time of the murder after being advised

18   of his right to remain silent may have been objectionable under *Doyle v. Ohio*, 426 U.S. 610 (1976).

19   But defense counsel may not have wanted to call the issue to the jury's attention and may not have

20   objected for tactical reasons.  See *Yarborough v. Gentry*, 540 U.S. at 6.  In any case, the superior

21   court correctly applied the applicable standards of United States Supreme Court precedent in finding

22   in its habeas corpus decision that his trial counsel did not provide ineffective assistance of counsel.

23   Exh. K.  The prosecutor's brief remarks during argument were not prejudicial in light of the

24   overwhelming evidence of petitioner's guilt.

25           Petitioner finally argues that his trial attorney provided ineffective assistance because he

26   failed to ensure that the jury was fair and impartial.  Pet., 18-21; Ps & As, 17-21.  Petitioner

27   contends that his trial attorney failed to challenge for cause and to use peremptory challenges to

28   dismiss some of the jurors.  Some of the jurors did express concerns about their ability to be

Memorandum of Points and Authorities in Support of Answer - *Nguyen v. Felker*, C 07-2479 MHP (pr)

1  impartial and to judge petitioner's case based upon their personal experiences.  As to some jurors

2  those concerns suggested that jurors might have difficulty convicting petitioner rather than difficulty

3  acquitting him.  The gravamen of petitioner's argument is that he disagrees with defense counsel's

4  tactical decisions in selecting the jury.  Petitioner's reliance on cases involving alleged juror

5  misconduct is misplaced.  See *Smith v. Phillips*, 455 U.S. 209, 217 (1982) ("it is virtually impossible

6  to shield jurors from every contact or influence that might theoretically affect their vote"); *Irvin v.*

7  *Dowd*,  366 U.S. 717, 722 (1961) (jurors' attitudes reflected the "pattern of deep and bitter

8  prejudice" of community).  Here there was no showing of juror misconduct.  The superior court

9  correctly applied the applicable standards of United States Supreme Court precedent in finding in

10  its habeas corpus decision that his trial counsel did not provide ineffective assistance of counsel.

11  Exh. K.

12       Petitioner has failed to show that defense counsel's conduct was outside the range

13  of acceptable representation and that had he done as petitioner contends he should, the jury would

14  have  acquitted him.  This Court should reject his claim and deny the petition.

15                                    **CONCLUSION**

16       Accordingly, for the reasons stated, respondent respectfully requests that the first

17  amended petition be denied with prejudice.

18       Dated:  December 7, 2007

19                          Respectfully submitted,

20                          EDMUND G. BROWN JR.
                           Attorney General of the State of California

21                          DANE R. GILLETTE
                           Chief Assistant Attorney General
22
                           GERALD A. ENGLER
23                          Senior Assistant Attorney General

24                          PEGGY S. RUFFRA
                           Supervising Deputy Attorney General
25

26                          /s/ Allen R. Crown
                           ALLEN R. CROWN
27                          Deputy Attorney General

                           Attorneys for Respondent
28

1

**TABLE OF CONTENTS**

2

**Page**

3    INTRODUCTION                                                                1

4    STATEMENT OF THE CASE                                                       2

5    STATEMENT OF FACTS                                                          3

6              Prosecution Case                                                  3

7              Defense Case                                                      6

8              Rebuttal Evidence                                                 7

9    STANDARD OF REVIEW                                                          8

10   **CLAIM ONE          PETITIONER WAS NOT DENIED HIS RIGHTS
                           UNDER THE SIXTH AMENDMENT'S**
11                         **CONFRONTATION CLAUSE**                              9

12   **CLAIM TWO           PETITIONER WAS NOT DENIED HIS RIGHT TO
                           EFFECTIVE ASSISTANCE OF APPELLATE**
13                         **COUNSEL**                                          11

14   **CLAIM THREE         PETITIONER WAS NOT DENIED HIS RIGHT TO
                           EFFECTIVE ASSISTANCE OF TRIAL COUNSEL**
15                                                                              12

16   CONCLUSION                                                                 15

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3 **Cases**

4 *Brecht v. Abrahamson*
  507 U.S. 619 (1993)                                              9, 11
5
  *Brewer v. Hall*
6 378 F.3d 952 (9th Cir. 2004)                                         8

7 *Chapman v. California*
  386 U.S. 18 (1967)                                                  10
8
  *Crawford v. Washington*
9 541 U.S. 36 (2004)                                               10, 11

10 *Davis v. Washington*
   126 S.Ct. 2266 (2006)                                             10
11
   *Doyle v. Ohio*
12 426 U.S. 610 (1976)                                                14

13 *Early v. Packer*
   537 U.S. 3 (2002)                                                   8
14
   *Fry v. Pliler*
15 ___ U.S. ___
   127 S.Ct. 2321(2007)                                                9
16
   *Irvin v. Dowd*
17 366 U.S. 717 (1961)                                                15

18 *Lockyer v. Andrade*
   538 U.S. 63 (2003)                                                  9
19
   *Miller-El v. Cockrell*
20 357 U.S. 322 (2003)                                                 9

21 *Mitchell v. Esparza*
   540 U.S. 12 (2003)                                                  8
22
   *Penry v. Johnson*
23 532 U.S. 782 (2001)                                                 9

24 *Shackleford v. Hubbard*
   234 F.3d 1072 (9th Cir. 2000)                                       9
25
   *Smith v. Phillips*
26 455 U.S. 209 (1982)                                                15

27 *Strickland v. Washington*
   466 U.S. 668 (1984)                                             11, 12
28

**TABLE OF AUTHORITIES  (continued)**

**Page**

*Williams v. Taylor*
529 U.S. 362 (2000)                                                  8, 9

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                                   8, 9

*Yarborough v. Gentry*
540 U.S. 1 (2003)                                                    13, 14

*Ylst v. Nunnemaker*
501 U.S. 797 (1991)                                                  9

**Constitutional Provisions**

United States Constitution
        Sixth Amendment                                              1, 9, 10, 12

**Statutes**

California Penal Code
        § 187(a)                                                     2
        § 667.5(c)                                                   2
        § 1192.7(c)                                                  2
        § 1192.7(c)(23)                                              2
        § 12022(b)(1)                                                2
        § 1203.075                                                   2

United States Code, Title 28
        § 2254                                                       9
        § 2254(d)                                                    8
        § 2254(e)(1)                                                 9

**Other Authorities**

Antiterrorist Effective Death Penalty Act of 1996 (AEDPA)            9